713 So.2d 822 (1998)
H.P. SANDI, Jr.
v.
Mary G. PALMER and Jerry F. Palmer.
No. 98-CA-34.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 1998.
*823 Joel Levy, Marrero, for Appellant H.P. Sandi, Jr.
Jerry F. Palmer, New Orleans, for Appellees Mary G. Palmer and Jerry F. Palmer.
Before WICKER, CANNELLA and DALEY, JJ.
CANNELLA, Judge.
Plaintiff, H.P. Sandi, Jr., appeals from a judgment dismissing his suit for specific performance or dissolution of a contract. We affirm.
Plaintiff and Mary G. Palmer (Mrs. Palmer) were married in 1970, had two children, Natalie and Meredith, and were divorced in 1981. In the partition of property, Mrs. Palmer received the community home. As *824 part of the agreement, she executed a non-interest bearing promissory note for $20,000 in favor of plaintiff and, to secure the debt, granted an inferior mortgage on the community house located on Beverly Garden Drive in Metairie, Louisiana. It was to be due and payable when, and if, the house were sold or rented. Mrs. Palmer subsequently married Jerry Palmer (hereinafter Mrs. Palmer and Jerry Palmer are referred to as the Palmers).
In 1987, the Palmers attempted to refinance the Beverly Garden Drive house in order to perform renovations. The financial institution they contacted required a re-subordination of plaintiff's mortgage, but plaintiff refused. In order to settle the dispute, plaintiff and the Palmers confected two agreements on August 11, 1987. In one, plaintiff agreed to cancel the note and mortgage for the $20,000 debt owed by Mrs. Palmer and agreed to lend the Palmers $60,000, secured by another inferior mortgage on the house. In return, the parties agreed to set up a trust for Natalie and Meredith, to be funded with $20,000 each from plaintiff and the Palmers. Thus, each daughter would be the beneficiary of $20,000. In addition, in order to insure that the trust was prepared within a reasonable time, the agreement provided that the parties would execute two promissory notes for $20,000 each, payable to Mrs. Palmer, as Tutrix for the children. If the trust were not established, the notes were to become due and payable 180 days from the date of the agreement. The notes were to be paid in five equal annual installments, with 10% interest if not paid when due. If the trust instrument were executed before 180 days, when the note payments became due, the notes were to be returned to the parties and destroyed. If the trust was executed and delivered to the co-trustees after the payment of the notes, Mrs. Palmer was to "... return the payments made under each such note to the individuals who made them." Any payments made under the notes to the Tutrix were to be held for the children for the same primary purpose as the Trust. The Palmers and plaintiff each executed a $20,000 promissory note on August 11, 1987, payable to Mary G. Palmer, Tutrix of Natalie and Meredith Sandi (hereinafter referred to as Default Notes). In addition, plaintiff complied with the other agreement by canceling Mrs. Palmer's $20,000 promissory note and mortgage and by executing the $60,000 loan and mortgage to the Palmers. In February of 1988, Jerry Palmer drew up a trust document and sent it to plaintiff for review. Plaintiff failed to respond. The trust was never established.
After the children reached the age of majority, Mrs. Palmer delivered the promissory notes to them. In 1993, plaintiff, though counsel, sent the Palmers a letter demanding that they comply with the 1987 agreement.[1]
In March of 1997, the Palmers entered into a "Compromise and Settlement" with Natalie and Meredith, canceling the notes and relieving the Palmers of the obligation to confect the trust and pay the notes according to the 1987 agreement. In return, the Palmers executed two new promissory notes, one each to Natalie and Meredith. The new note in favor of Natalie was $5,761, instead of $10,000, in consideration of previous advances made by the Palmers to her. The principal amount of Meredith's note was $10,000. In addition, Mrs. Palmer executed an inferior mortgage on the Beverly Garden Drive house, in favor of her two daughters, to secure the notes. The notes were due and payable at the time of the sale of the house or the death of Mrs. Palmer, whichever came first.
On August 18, 1995, prior to the 1997 Compromise and Settlement between the Palmers and Natalie and Meredith, plaintiff filed suit against the Palmers. In his petition, plaintiff sought dissolution of the 1987 trust agreement on the basis that the Palmers had not established the trust and breached the agreement. He demanded that he and Mrs. Palmer be placed in the positions they held prior to the agreement and that the $20,000 note, owed by Mrs. Palmer under the community property agreement, be reinstated. *825 He also asked that the Palmers be ordered to return the remaining principal balance of the $60,000 loan. Alternatively, he asked for specific performance of the 1987 trust agreement. Subsequently, the Palmers paid back the $60,000 loaned to them by plaintiff.
A judge trial was held on September 4, 1997 relative to the trust only. The trial judge rendered a judgment on September 23, 1997 denying plaintiff relief and dismissing his suit with prejudice.
On appeal, plaintiff asserts that the trial judge erred in dismissing his suit. He contends that he gave up the $20,000 promissory note and mortgage in consideration of the trust agreement that was never confected. Plaintiff argues that the trial judge should have restored the parties to the positions they held prior to the 1987 agreement, citing La. C.C. art.2013, 2018 and C.C.P. art. 1980. He further contends that the trial judge erred in admitting into evidence on the basis of hearsay and irrelevancy the Compromise and Settlement between the Palmers and Natalie and Meredith.
The Palmers respond that the 1987 agreement was a novation of the community property agreement and that it substituted new obligations for the old with different parties, citing La. C.C. art. 1879, Litvinoff, The Law of Obligations, Section 17.34 and La. C.C. art. 1881, comment (c) La. They contend that the 1987 agreement was a stipulation pour autrui and that it was confected for the benefit of Natalie and Meredith. When the two daughters reached majority, they relieved the Palmers of their obligations under the 1987 agreement. Thus, they contend that plaintiff no longer has standing to complain that the trust was not established.
The Palmers point out that the agreement to establish the trust contains alternative obligations. The first obligation was that the parties would establish the trust and fund it with $20,000 from plaintiff and $20,000 from the Palmers. The alternative was to pay the promissory notes (Default Notes) in equal annual installments for five years. The Palmers cite C.C. arts. 1808 and 1809, C.C. art. 1978. They argue that, when plaintiff refused to execute the trust document when it was sent to him in 1988, plaintiff's refusal was an election to perform the alternative obligation, i.e. to pay the Default Notes. Since the Default Notes were payable to Natalie and Meredith, once they reached majority and accepted the stipulation in their favor, only they can assert a cause of action against the Palmers for payment of the Default Notes. The Palmers also argue that the agreement contemplated that one trust, not separate trusts, would be formed and that it would be funded by $40,000. As a result, plaintiff also had the obligation to execute and fund the trust, which he failed to do.
Plaintiff first contends that the settlement between Natalie and Meredith and the Palmers was hearsay and irrelevant. We disagree. The settlement was very relevant to the issues in this suit. It was the proof that plaintiff no longer had an interest in pursuing the breach of the agreement, as discussed below. Furthermore, it was not hearsay for two reasons. First, it was admissible because a party to the settlement, Jerry Palmer, testified at trial. Second, it was not introduced for the "truth of the matter asserted", but rather to show that the dispute had been settled by the interested parties, Natalie and Meredith.
Next, plaintiff argues that the trial judge erred in dismissing his suit. He contends that he gave up the $20,000 promissory note and mortgage in consideration for the trust agreement that was never confected.
The 1987 agreement relative to the trust, provides as follows:
Agreements of the Parties
A. Creation and Funding of Natalie E. Sandi and Meredith M. Sandi Trust
In consideration of his love and affection for Natalie and Meredith, H.P. Sandi, Jr., on the one hand, and in consideration of their love and affection for Natalie and Meredith and the cancellation of the $20,000 Note and $20,000 Mortgage by H.P. Sandi, Jr., Mary G. and Jerry F. Palmer (collectively the "Palmers"), on the other hand, hereby agree to create a trust benefitting Natalie and Meredith on the terms *826 and conditions hereinafter set forth (hereinafter the "Trust").
The beneficiaries of the Trust shall be Natalie E. Sandi and Meredith M. Sandi (hereinafter the "Beneficiaries").
H.P. Sandi, Jr., on the one hand, and Mary G. and Jerry F. Palmer, on the other hand, shall cause a trust instrument to be prepared in accordance with the above described terms within a reasonable period after the date hereof. In order to ensure that such trust instrument is prepared within a reasonable period of time after the date hereof, H.P. Sandi, Jr. and the Palmers shall each make a promissory note in the amount of $20,000.00 dated as of the date hereof in favor of Mary G. Palmer, Tutrix of Natalie E. Sandi and Meredith M. Sandi. Each such note shall be non-interest bearing and shall be due and payable in five equal annual installments of Four Thousand and No/100 ($4,000.00) Dollars., the first annual installment being due one hundred eighty (180) days after the date of such note and the four remaining installments due on the four subsequent anniversary dates of the first installment. If an annual installment is not paid when it is due, it shall bear interest at the rate of ten (10%) percent per annum until paid. If the trust instrument is executed on or before the date on which the first installment is due under such note, Mary G. Palmer shall return the note made by H.P. Sandi, Jr. to H.P. Sandi, Jr. and the note made by the Palmers to the Palmers whereupon they shall destroy their respective notes. If the trust instrument is not executed before such date, Mary G. Palmer shall enforce each such note and hold the amounts paid thereunder on behalf of the Beneficiaries for the same primary purpose as the Trust. At such time as the trust instrument is thereafter executed and the promissory notes are delivered to the co-trustees, Mary G. Palmer shall return the payments made under each such note to the individuals who made them.
H.P. Sandi, Jr. and Mary G. and Jerry F. Palmer hereby agree to incorporate the terms of the Trust described above into the trust instrument and to negotiate the remaining terms in good faith.
B. Cancellation of the $20,000 Note and $20,000 Mortgage
In consideration of the agreement of the Palmers to create and fund the Trust, H.P. Sandi, Jr. hereby agrees, upon the execution of this letter agreement and the promissory notes in favor of Mary G. Palmer, Tutrix of Natalie E. Sandi and Meredith M. Sandi, to cancel the indebtedness of $20,000 evidenced by the $20,000 Note, to return the $20,000 Note to Mary G. Palmer, and to execute any and all instruments necessary to obtain the cancellation of the $20,000 Mortgage ...
We agree with the Palmers that the 1987 agreement was a novation of the community property agreement and that it substituted new obligations for old with different parties. La. C.C. art. 1879. However, the letter agreement was a new contract between plaintiff and Mrs. Palmer. This document appears to contain two separate contracts. The first contract (referred to as Obligation A), is between plaintiff and the Palmers agreeing that plaintiff will cancel the $20,000 promissory note and mortgage, evidencing the debt owed to him by Mrs. Palmer, in consideration for the Palmers' agreement to establish the trust. Thus, Mrs. Palmer owed plaintiff the obligation to establish the trust. Under La. C.C. Art.2013, an obligee to an obligation is entitled to have a contract dissolved if the obligor fails to perform. However, the contract itself may provide the remedy for the breach. At best, the agreement here provides the remedy for any breach by Mrs. Palmer by virtue of the alternative Default Notes in the stipulation pour autrui. At worst, the agreement is ambiguous and the intent of the parties must be ascertained to give it the meaning intended.
The second contract (referred to as Obligation B), established in the letter agreement, is the stipulation pour autrui in favor of plaintiff and Natalie and Meredith. See: La. C.C. art. 1978.[2] The obligations contained *827 therein are owed by the parties to Natalie and Meredith. A stipulation pour autrui can only be revoked by the stipulator. La. C.C. art. 1979. It can also be dissolved by the mutual consent of the parties. La. C.C. art. 1978.[3] However, the stipulation cannot be revoked after the third-party beneficiary has manifested his intention to avail himself of the benefit. La. C.C.art.1979. Further, it cannot be dissolved without the beneficiary's consent. La. C.C.art.1978. In this case, the beneficiaries availed themselves of the benefit through the participation of the Tutrix in the agreement, or when the daughters settled the matter with the Palmers. Thus, the stipulation pour autrui cannot be dissolved or revoked at this stage.
The right of action to demand performance of the stipulation pour autrui belongs to either the stipulator, for the benefit of the third party, or the third party beneficiary. La. C.C. art. 1981. Plaintiff, one of the stipulators, along with the Palmers demanded performance when he filed suit in 1995, alternatively requesting specific performance of the obligation to establish the trust. However, the third party beneficiaries here, Natalie and Meredith, also had the right to demand performance of the 1987 contract.
After performance was demanded by plaintiff in this suit for the benefit of the third-party beneficiaries, the third-party beneficiaries chose to renegotiate the terms of the Default Notes by way of settlement, rather than pursuing their right to the establishment of the trust. While there is no guiding jurisprudence on this issue, we find that La. C.C. art.1981 implicitly gives competent major persons the right to take an active part in and settle differences raised by the stipulator's demands. In the absence of any law to the contrary, once the third-party beneficiary chooses to settle the matter, the stipulator no longer has an interest in pursuing the demand. Thus, in this case, the actions of Natalie and Meredith caused plaintiff to lose his standing to pursue any further his demand for specific performance. Thus, the trial judge did not err in refusing to order specific performance of Obligation B, the stipulation pour autrui.
The Civil Code provides that an obligation can be alternative. La. C.C. art. 1808. It is alternative "when an obligor is bound to render only one of two or more items of performance." Id. The choice belongs to the obligor, unless it has impliedly or expressly granted to the obligee. La. C.C. art. 1809. Here, the stipulation pour autrui contains two alternative obligations. First, the parties were to establish the trust for the children, with each side funding the trust with $20,000. Alternatively, if the parties failed to establish the trust within 180 days, the Default Notes became due and payable under the contract terms. The parties had the option of either executing and funding the trust or paying the notes. If the trust was not established within 180 days of the agreement, the alternative obligation to pay the Default Notes was to be triggered.[4] The contract provided that the alternative obligation was owed to the third-party beneficiaries. This is in the nature of a liquidated damage provision, because it provides a remedy for a breach of the agreement to establish the trust. We find that this remedy for failing to establish the trust was intended to affect both "contracts."
The evidence shows that plaintiff intended the children to benefit from the debt which Mrs. Palmer owed him. Although the trust would have been more beneficial to the children, failing that, his intent was still accomplished by virtue of the Default Notes. *828 Natalie and Meredith were provided with a legally enforceable promissory note in the amount of the debt owed to plaintiff.[5] Thus, plaintiff abandoned his personal remedy for breach of the agreement to be placed in the position which he held prior to the agreement and substituted a remedy that would benefit Natalie and Meredith. Further, plaintiff assigned the right to assert the remedy of collecting the debt by making the Default Notes payable to Natalie and Meredith. Thus, he also gave up his right to sue on the notes for their breach. As a result, we find that the trial judge did not err in dismissing plaintiff's petition against the Palmers for breach of the contract to establish a trust.
Accordingly, the judgment of the trial court is hereby affirmed.
Costs are to be paid by plaintiff.
AFFIRMED.
NOTES
[1] In that letter, it was noted that plaintiff had donated $19,000 each to Natalie and Meredith, pursuant to the Uniform Transfer to Minors Act. That action was not an obligation under the 1987 agreement and is not relevant to these issues.
[2] Art. 1978. Stipulation for a third party

A contracting party may stipulate a benefit for a third person called a third party beneficiary.
Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary's agreement.
[3] Art. 1979. Revocation

The stipulation may be revoked only by the stipulator and only before the third party has manifested his intention of availing himself of the benefit.
If the promisor has an interest in performing, however, the stipulation may not be revoked without his consent.
[4] This provision was in fact triggered in 1988. It appears that no one pursued its enforcement. The petition against the Palmers does not demand payment of the note.
[5] By not establishing the trust and by not legally pursuing the collection of the notes, the parties caused the children to lose the benefits of interest and growth of the trust investment that they might have obtained. However, Natalie and Meredith have settled that matter and it should no longer be plaintiff's concern.